**ÆTNA LIFE INS. CO. v. EATON, Internal Revenue Collector.**

**No. 382.**

Circuit Court of Appeals, Second Circuit.
July 14, 1930.

712

Day, Berry & Reynolds, of Hartford, Conn., and Bruce & Bullitt, of Louisville, Ky. (William Marshall Bullitt, of Louisville, Ky., and Harry W. Reynolds, of Hartford, Conn., of counsel), for appellant.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn. (C. M. Charest, Gen. Counsel, and E. H. Horton, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal involves the right of the Ætna Life Insurance Company to recover from Eaton personally, who is collector of internal revenue, $376,340.37, corporation income taxes for the years 1923 and 1924, which he collected from it.

Ætna had filed its returns for income taxes for the years 1922, 1923, and 1924, paid the taxes thereunder, and filed claims for refunds, aggregating $102,532.86, on account of certain deductions which it claimed. None of the items sought to be refunded form any part of the $376,340.37, to recover which the present action was brought. Items other than this $376,340.37 were in dispute during the government audits and from time to time were allowed and disallowed. Finally a refund of $89,831.08, with interest amounting to $11,152.58, was allowed in 1927, and checks were sent to the taxpayer in repayment. Accompanying the checks was a letter inclosing a printed form 866A, suggesting to Ætna that it might "enter into a written agreement making the determination and assessment of * * * tax liability final and conclusive." The varying fortunes which the refunding claims of Ætna had already suffered very likely impressed it with the desirability of having the amount of its taxes no longer open to a reaudit. At all events, and whatever may have been the reason, a so-called "closing agreement" was signed by it on December 23, 1927, in which the Commissioner of Internal Revenue joined under date of January 14, 1928. The agreement recited that there had been a determination and assessment of a named sum as the amount of tax due on account of income for the years, 1922, 1923, and 1924, that the taxpayer had paid the tax so determined, had accepted any refund based on the assessment, and had "accepted the adjustment made with respect to any and all claims filed in connection therewith." The agreement provided that the "taxpayer and * * * Commissioner of Internal Revenue with the approval of the Secretary of the Treasury * * * mutually agree that such determination and assessment shall be final and conclusive."

In National Life Insurance Co. v. United States, 277 U. S. 508, 48 S. Ct. 591, 72 L. Ed. 968, the provisions of the Revenue Act of 1921, laying an income tax upon life insurance companies, were under consideration. The act taxed all interest and dividends less a deduction (1) of income derived from tax exempt securities; (2) of a further sum equal to 4 per centum of the company's legal reserve, diminished, however, by any interest which it might receive from tax-exempt securities. A majority of the Supreme Court held that this was an indirect way of taxing the income of United States, state, and municipal bonds, that, so far as it affected state and municipal bonds, it was unconstitutional, and, so far as it affected United States bonds, was contrary to the manifest purpose of the statute.

Ætna received its first notice of the foregoing decision in National Life Insurance Co. v. United States on June 6, 1928, and a week later filed with the defendant herein a claim for a refund of taxes for the years 1923–1926 founded upon that case. At the time Ætna executed the closing agreement it was not aware that any question had arisen between the government and any other party as to the right of the government to offset from the deduction of 4 per centum of the legal reserves of life insurance companies any interest which these companies might receive from tax-exempt securities. In other words, Ætna supposed section 245 (a) (2), 42 Stat. 261, under which the deductions were figured, was constitutional.

The refunding claim for the years 1925 and 1926 was granted for the reason that no closing agreement had been entered into for those years, but it was denied for the years 1923 and 1924 on the ground that the agreement was a bar.

The closing agreement signed by the Commissioner on January 14, 1928, was made

under the authority of section 1106 (b) of the Revenue Act of 1926 (26 USCA § 1249 note), which read as follows:

"If after a determination and assessment in any case the taxpayer has paid in whole any tax or penalty, or accepted any abatement, credit, or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner * * * with the approval of the Secretary * * * that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made), (1) the case shall not be reopened or the determination and assessment modified by any officer, employee, or agent of the United States, and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States."

If interest from tax-exempt securities had not been deducted from 4 per centum of the company's legal reserves in calculating the taxes for 1923 and 1924, the taxes actually paid for those years would have been reduced by $376,340.37, the sum sought to be recovered in this action. It was because of an erroneous assumption on the part of Ætna that section 245 (a) of the Revenue Act 1921 embodied a valid requirement as to the mode of calculating taxes on the income of life insurance companies that the overpayments of $376,340.37 were made. No fraud, malfeasance, or misrepresentation of fact affecting the assessment is claimed.

Ætna set up the foregoing matters in its complaint against the collector in an action of indebitatus assumpsit, to which the latter interposed a demurrer on the ground:

(1) That the complaint did not state facts sufficient to constitute a cause of action.

(2) That, under section 1106 (b) of the Revenue Act of 1926, the assessment of the Commissioner was final and conclusive.

(3) That, under section 1106 (b) of the Revenue Act of 1926, by reason of the closing agreement, the court was without jurisdiction to determine the issue in this action or to annul the assessment of the Commissioner.

Judge Burrows, before whom the demurrer was argued, filed a memorandum in which he held that the prohibition in subsection (2) of section 1106 (b) was a limitation on the powers granted under section 24 of the Judicial Code (28 USCA § 41) and deprived the court of jurisdiction. He thereupon signed an order in general terms "that said demurrer be and the same hereby is sustained" and a judgment was entered to that effect accordingly. From this judgment Ætna appeals and makes two main contentions:

(1) That the closing agreement was not conclusive as to taxes collected under unconstitutional provisions of the revenue laws.

(2) Section 1106 (b) supra, did not deprive the District Court of jurisdiction of this action against the collector.

It is to be noticed that the Revenue Act of 1921 under which income taxes were laid upon Ætna was not held unconstitutional. The Supreme Court only declared invalid the portion of subdivision (2) of section 245 (a) which undertook to abate the 4 per centum deduction by the amount of interest received from tax-exempt securities. Section 1403 of the same act (42 Stat. 321) expressly provides that, if any provision of the act be held invalid, the remainder of the act shall not be affected thereby. Consequently the act. for the taxation of. life insurance companies stands simply with the abatement provision excided and the statutory provisions that a closing agreement shall not be reopened or annulled except for fraud apply ex proprio vigore.

It is evident from the history of the section of the Revenue Act authorizing closing agreements that they were intended finally to settle the income taxes for the years in question and to prevent reaudits of assessments. Ætna's counsel concede that it would cover all matters such as:

(a) Errors of arithmetic and computation.

(b) Interpretation of the Revenue Acts.

(c) Application of the Revenue Acts to the facts of a particular case, including the questions that occasion so many cases in the Circuit Court of Appeals and the Supreme Court.

(d) What income and what deductions are included within the terms of the Revenue Acts.

(e) Accounting, values and depreciation, and dividends to policyholders.

(f) Rulings by the Treasury Department.

In view of the foregoing concession and on general principles, why should appellant except from the settlement taxes based upon a single provision of the act held to be unconstitutional? Not because the collection

was unwarranted, for a collection based upon a wrong interpretation of the meaning or scope of the statute would be equally unwarranted. In either case a sum of money would be exacted without authority of law upon an assumption that the authority existed. The logic of such a construction of section 1106 (b), as appellant seeks, would destroy its object, for everything would be left open that was not specified or was not at least within the minds of the parties when the closing agreement was made. But the section in terms covers everything except fraud, and can have little use if it permits new questions to be raised after a closing agreement is executed. The agreement was made pursuant to the statute and is bound to be given the effect therein prescribed. Section 1106 (b) excludes mistakes of fact, and a fortiori of law, as grounds for rescission. Only fraud, malfeasance, or misrepresentation are mentioned as a basis for attacking the assessment, and none of these is alleged to have existed.

■ There can be no doubt that the taxpayer could adjust a claim for repayment of taxes collected under a provision of law afterwards held to be unconstitutional, and we can see no reason why a statute cannot provide that a settlement with a taxing official shall embrace *all* matters affecting an assessment. If Ætna had not wished to prevent the presentation of future claims in reassessments by the Commissioner, it doubtless would not have executed the closing agreement. Having done so, it was necessarily bound by the consequences of such a mutual undertaking. Any precedents relied on by plaintiff, to the effect that a release, though general in its terms, does not cover matters not within the contemplation of the parties, are beside the mark, for here the statute prescribes just what effect a closing agreement shall have upon the assessment, and says that "(1) the case shall not be reopened or the determination modified by any officer, employee or agent of the United States and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States."

■ We are clear that by the closing agreement the parties in fact intended to settle all questions relating to the validity of the assessments for 1923 and 1924, and that, irrespective of this, the Revenue Act made the agreement a statutory bar.

■ But the appellant argues that the collector is a wrongdoer, outside the protecting clauses of section 1106 (b), and may thus not avail himself of defenses open to the

United States for which he was purporting to act. This contention, in our opinion, has no merit. In Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 46, 72 L. Ed. 253, where the sufficiency of a claim for a refund of taxes in an action against a collector was before the Supreme Court, Justice Stone, who wrote the opinion, said: "Literal compliance with statutory requirements that a claim or appeal be filed with the Commissioner before suit is brought for a tax refund may be insisted upon by the defendant, whether the collector or the United States."

And in Arnson v. Murphy, 109 U. S. at page 243, 3 S. Ct. 184, 188, 27 L. Ed. 920, the court remarked that the common-law action against a collector for exaction of unlawful taxes "has been converted into an action based entirely on a different principle—that of a statutory liability, instead of an implied promise—which, if not originated by the act of congress, yet is regulated, as to all its incidents, by express statutory provisions." It is evident that section 1106 (b) applies to actions against collectors as well as to those against the United States.

■ We likewise find no merit in appellant's contention that section 1106 (b) was repealed by section 606 of the Revenue Act of 1928 (45 Stat. 874), approved after the closing agreement was executed. Section 606 (c) contained the provision: "But such repeal shall not affect any agreement made before such repeal takes effect." This clause saved the closing agreement both as to its validity and as to its effect under section 1106 (b).

■ While Judge Burrows signed an order in general terms sustaining the demurrer to the complaint, his memorandum indicates that he regarded the words of subdivision (2) of section 1106 (b) that "no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States" as depriving the District Court of jurisdiction. Whether the clause had such an effect is a close question and one which, in Bankers' Reserve Life Co. v. United States, 42 F.(2d) 313, the Court of Claims has answered in the affirmative. The words of subdivision (2), supra, in our opinion, established a rule of law defining the duty of the court, and did not limit its jurisdiction.

In Fauntleroy v. Lum, 210 U. S. at page 234, 28 S. Ct. 641, 642, 52 L. Ed. 1039, a law of Mississippi making dealings in futures a misdemeanor and providing that such contracts "shall not be enforced by any court" was under consideration. Justice Holmes,

writing for the Supreme Court, said: "Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense. When it affects a court of general jurisdiction, and deals with a matter upon which that court must pass, we naturally are slow to read ambiguous words as meaning to leave the judgment open to dispute, or as intended to do more than to fix the rule by which the court should decide."

Again in Burnet v. Desmornes y Alvarez, 226 U. S. at page 147, 33 S. Ct. 63, 57 L. Ed. 159, Justice Holmes, said: "When a court has general jurisdiction to try the question whether an alleged right exists, the rules that determine the existence of the right ordinarily govern the duty only of the court, not its power. Its judgment that the right is established cannot be impeached collaterally by proof that the judgment was wrong. For instance, a common-law court ought not to give judgment for the plaintiff upon a parol promise without consideration, but if it does so the judgment is not open to collateral attack. Even words in a statute that might seem to affect the power of the court, such as 'no action shall be brought,' in the statute of frauds, are assumed without question merely to fix the law by which the court should decide. * * *"

■ In cases where taxes are unlawfully collected, the District Court ordinarily has jurisdiction to dispose of the rights of the parties. It seems reasonable to hold that it has such power here and that section 1106 (b) (2) is nothing more than a statutory provision which makes a closing agreement a defense to the action. The result of holding that there was no jurisdiction would be to allow Ætna to bring other actions, for only a decision on the merits is res judicata. Hughes v. United States, 4 Wall. 232, 18 L. Ed. 303; Shaw v. Broadbent, 129 N. Y. 114, 29 N. E. 238.

■ But while the judge made an order sustaining the demurrer generally, he signed a judgment ordering the filing of his memorandum which only sustained the demurrer for lack of jurisdiction. This we think limited the dismissal to that point and makes it necessary to reverse the judgment and remand the case with direction to dismiss on the ground that the complaint states no cause of action. House v. Mullen, 22 Wall. 42, 22 L. Ed. 838.

The situation is different from that in Patterson v. Farmington St. Ry., 76 Conn.

628, 57 A. 853. There the demurrer stated many grounds, some formal and some substantial. The memorandum filed by the trial judge sustained the demurrer upon only a portion of these grounds, but all were enumerated in the judgment. On appeal, the judgment was held to embrace all the grounds. In the case at bar, the judgment was general, but the memorandum filed pursuant to it related only to lack of jurisdiction. Consequently that must be regarded as the only basis for the judgment, which was not therefore a decision upon the merits.

The judgment is reversed, and the case is remanded, with direction to dismiss because the complaint states no cause of action.