HERING et al. v. TAIT, Collector of Internal Revenue.

No. 3463.

Circuit Court of Appeals, Fourth Circuit.

June 15, 1933.

704

John H. Skeen and Hilary W. Gans, both of Baltimore, Md. (Emory, Beeuwkes, Skeen & Oppenheimer and Brune, Parker, Carey & Gans, all of Baltimore, Md., on the brief), for appellants.

Simon E. Sobeloff, U. S. Atty., of Baltimore, Md. (James K. Cullen and Wilfred T. McQuaid, Asst. U. S. Attys., both of Baltimore, Md., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

PARKER, Circuit Judge.

This is an appeal in an action to recover income taxes paid for the years 1926 and 1927. The plaintiffs in the court below were the receivers of the First National Company, a Delaware corporation doing business in the city of Baltimore. Defendant was the Collector of Internal Revenue for the state of Maryland to whom the taxes had been paid. The allegation of plaintiffs was that no taxes were due by the corporation for the years in question, for the reason that it earned no taxable income during these years, and that claim for refund had been properly filed and disallowed. Defendant pleaded the statute of limitations as to a portion of the taxes paid for the year 1926; and it is conceded that this plea is good. He pleaded also the execution of closing agreements under section 606 of the Revenue Act of 1928 (26 USCA § 2606) covering the taxes paid for both years. These closing agreements were attacked by the replication as having been executed as the result of fraud, malfeasance, and misrepresentation. There was verdict and judgment for defendant; and plaintiffs have appealed, assigning error in the charge of the court to the effect that fraud which would vitiate the closing agreements was fraud on the part of the agents of the party seeking to uphold the agreements, and not fraud on the part of the party attacking them or its agents.

The facts are that for the years in question, and for some time prior thereto, the First National Company was engaged in the general mortgage business. For the purpose of showing a profit as a basis for sales of stock to the public, and to make it possible for its officers to continue to draw large salaries, these officers during the years 1926 and 1927 set up on its books as profits the difference between the par value of securities purchased by it and the price actually paid for such securities. Its income tax returns for the years in question were made on the basis of the fictitious profits so shown, although it had earned no taxable income whatever during either of the years. It is stipulated that its officers and agents made these returns for fraudulent purposes and that they knew that the corporation had earned no taxable income for either of the years.

In 1930 when an agent of the revenue department was checking over the returns of the corporation for the year 1927, he discovered that it had taken credit for a loss in that year on account of stock claimed to be worthless, which made a difference of $9,000 in the tax assessable against it. Upon investigation he found that the loss was not deductible in that year but that, because in the year 1926 the stock had been entered upon the books of the corporation at a figure in excess of its real value, the tax for 1926 had been increased as a result thereof in the amount of $9,000. In order to avoid the necessity of an additional assessment of $9,000 for 1927 and the filing of a refund for a like amount for 1926, the agent suggested that closing agreements for both years be executed, and this was accordingly done. The verdict of the jury negatives any fraud, malfeasance, or misrepresentation on the part of the agents of the government in connection with these closing agreements. The only question in the case is whether the plaintiffs can avoid them on account of the fraud and misrepresentation of the officers of the corporation. We agree with the judge below that they cannot.

The statute under which the closing agreements were executed is as follows (45 Stat. 874, 26 USCA § 2606):

Sec. 606. *"Closing Agreements*

"(a) Authorization. The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement.

"(b) *Finality of Agreements.* If such agreement is approved by the Secretary or the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of 'a material fact—(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and (2) in any

suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

It will be noted that closing agreements entered into pursuant to this statute are made final and conclusive and that they may not be annulled, modified, set aside, or disregarded, except upon a showing of fraud, malfeasance, or misrepresentation. The question presented is whether the fraud, malfeasance, or misrepresentation must be that of the party seeking to uphold the agreement, or whether such conduct on the part of the party attacking it or his agents will suffice. We think that the former is clearly the correct interpretation. The evident intention of Congress was to give these agreements the effect of valid and binding compromises of disputed matters; and certainly no party to a compromise would be permitted to set it aside because of the fraud of his own agents, where there was no knowledge of or participation in the fraud on the part of the opposite party.

It is argued that the fraud was perpetrated on the corporate taxpayer and its creditors by its unfaithful officials and that it should not be held responsible for their acts; but the answer is that under well-settled principles it is bound by their acts unless the party with whom they were dealing had knowledge of the fraud. Here, the officers of the government had no knowledge of and did not participate in the fraud. The corporation was required by law to make a tax return. It performed this duty through its officers, and their act was its act. The same is true with respect to the closing agreements, with the added observation that the purpose of these was evidently, not to perpetrate a fraud on any one, but to obviate the necessity of filing petition for refund as to one year and of paying additional tax as to the other.

The receiver of the corporation stands in no better position with respect to recovering the tax than the corporation itself would have occupied; for he succeeds merely to the rights of the corporation. See Burrowes v. Nimocks (C. C. A. 4th) 35 F.(2d) 152, 159; Schumacher v. Eastern Bank & Trust Co. (C. C. A. 4th) 52 F.(2d) 925, 928; Hood, Com'r v. Brownlee (C. C. A. 4th) 62 F.(2d) 675, 676, and cases there cited; also 14A Corpus Juris, page 990. And it is unthinkable that the corporation itself could set aside the closing agreement and recover the tax paid because of the fraud perpetrated in its own return.

The precise question was before the Circuit Court of Appeals of the Ninth Circuit in Johnston v. McLaughlin, 55 F.(2d) 1068, 1069. In that case it appeared that the president of a corporation, which had in reality sustained a loss during the taxable period, filed a return showing a profit for the purpose of deceiving creditors and stockholders of the corporation, and that on the basis of this return a closing agreement was executed. In holding that the trustee in bankruptcy of the corporation might not avoid the effect of the closing agreement because of the fraud perpetrated on creditors and stockholders by its officers, the court, speaking through Judge Wilbur, said: "It is a fundamental principle of law that no person can take advantage of his own wrong. The appellant here bases his action upon the wrong committed by the Du Pont Milling & Sales Corporation acting through its duly appointed officers. This cannot be done. If an individual taxpayer had made the tax return showing an income never actually received for the purpose of deceiving his present or prospective creditors, he could not be heard to urge in a suit against the government that he had made a false return in order to defraud his creditors. The rule is the same with reference to a corporation. The claim is here that the corporation, for the purpose of deceiving its creditors, made a false return to the government. To claim that this fraudulent purpose was also directed toward deceiving the stockholders of the corporation does not alter the fact that the trustee in bankruptcy is here asserting the rights of the corporation and not of the creditors or the stockholders. Indeed, so far as the stockholders are concerned, in view of the insolvency of the corporation, it is doubtful if they have any interest in the outcome of this litigation, but whether they have or not is entirely immaterial."

Another recent case very much in point is that of the Court of Claims in Hyde v. U. S., 59 F.(2d) 302, 303. In that case a taxpayer had made returns and executed a closing agreement on the basis of misrepresentations made to her by the trustee of her father's estate. In a suit to recover the overpayment in taxes, it was held that the effect of the closing agreement could not be avoided because of these misrepresentations. The court, speaking through Judge Green, said: "The statute does not expressly limit the misrepresentations upon which the agreement may be set aside to statements made by the agents of the government, but a reading of the context shows plainly that the statute was not intend-

ed to apply to misrepresentations made by other parties."

This language of the opinion is to be construed, of course, in the light of the case to which it relates. The statute in our opinion contemplates that closing agreements may be avoided on account of fraud and misrepresentation on the part of the taxpayer as well as on the part of the agents of the government; but where the taxpayer is attacking the closing agreement and the government relies upon it, as in that case and this, it is only fraud, malfeasance, or misrepresentation on the part of the agents of the government which will justify disregarding it. In other words, the fraud, malfeasance, or misrepresentation which the statute contemplates must be that of the party claiming under the agreement, and not that of the party attacking it.

We are conscious of the hardship upon the creditors and stockholders of the corporation in having paid a tax upon income when in fact there was no income; but this was in no sense the fault of the government or its agents, and there was no fault on their part in connection with the closing agreements which were executed. When the corporation made its returns as a basis of taxation, the government had a right to rely upon them and to enter into closing agreements on the basis of their correctness; and we do not think that Congress intended to introduce into the collection of the public revenues the uncertainty which would result from allowing corporations to impeach such agreements on account of the fraud of their own agents in making them. The hardship of such cases is certainly no greater than that involved where the tax covered by the agreement has been assessed under a statute later held unconstitutional, and where the agreement has been upheld. See Ætna Life Ins. Co. v. Eaton (C. C. A. 2d) 43 F.(2d) 711, certiorari denied 282 U. S. 887, 51 S. Ct. 90, 75 L. Ed. 782. But the fact that hardship may result in individual cases from the interpretation of the statute which we think correct, would not justify us in adopting another interpretation at variance with the ordinary legal sense of the language used, and one likely to result in great confusion and loss to the government in the collection of the public revenues.

We are not impressed with the argument that the execution of the closing agreements was ultra vires, or that the government, with respect to the taxes paid, occupied the position of a donee who had received trust funds. The corporation was certainly empowered to make tax returns and execute closing agreements; and its officers in making returns required by law and executing agreements which the law sanctioned, were certainly acting within the scope of their authority. Their fraudulent conduct was an abuse of authority, not action without authority. And under no possible theory can the government be considered a donee. The assessment of taxes created an obligation to pay which was binding unless set aside in the manner prescribed by law. The government requires the payment of taxes in its sovereign capacity. As a sovereign it prescribes the terms upon which assessments will be set aside and taxes paid be refunded. And in no case does it sustain, as to the payment of taxes which have been assessed, the situation of a donee. In the case at bar, therefore, the question is, not whether a quid pro quo has been received for the taxes paid, but whether the statute permits the taxpayer, under the circumstances here disclosed, to avoid the effect of a closing agreement. We do not think that it does.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.