# WOLVERINE PETROLEUM CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.*

## No. 10049.

Circuit Court of Appeals, Eighth Circuit.

Jan. 22, 1935.

Rehearing Denied Feb. 11, 1935.

Truman Post Young, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for petitioner.

A. F. Prescott, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a decision of the Board of Tax Appeals, (29 B. T. A. 1236) sustaining the assessment by the Commissioner of a deficiency of $32,258.86 in the petitioner's income tax for the period September 1 to December 31, 1923. The facts as found by the Board of Tax Appeals are as follows:

The taxpayer, a Maine corporation, which, on August 27, 1923, changed its name from the Central Petroleum Company, was the parent company of affiliated corporations consisting of the Wolverine Oil Company, Sagamore Oil & Gas Company, Wigwam Oil Company, Roth-Argue-Maire Bros. Oil Company, and the St. Lawrence Oil Company. The petitioner owned all of the outstanding capital stock of the Wolverine Oil Company, Roth-Argue-Maire Bros. Oil Company, and the St. Lawrence Oil Company, except qualifying shares, and substantially all of the outstanding capital stock of the other two subsidiaries. On January 5, 1923, the Board of Directors of the taxpayer authorized its president to cause the assets of the subsidiary companies to be transferred to it and to bring about the dissolution of the subsidiary companies. The assets of the Roth-Argue-Maire Bros. Oil Company were conveyed to the petitioner on March 1, 1923, and the assets of the other companies on January 31, 1923. The petitioner assumed all of the liabilities of the subsidiary companies outstanding on September 31, 1922, and agreed to buy such stock of the Sagamore Oil & Gas Company and the Wigwam Oil Company as it did not own. All of the subsidiary companies were dissolved after December 31, 1923. The subsidiary corporations maintained separate sets of books prior to the conveyance of their assets, and continued this system until August 31, 1923, when, as a matter of conven-

*Writ of certiorari denied 55 S. Ct. 656, 79 L. Ed. ——.

ience, the books were closed and the balances transferred to like accounts in the books of the taxpayer.

The affiliated group filed returns on the basis of a fiscal year ending April 30 up to and including 1923. Upon request, the Commissioner permitted the corporations to change their accounting period to a calendar year basis, and accordingly the taxpayer filed a consolidated return for taxes for the subsidiaries for the period of eight months ending December 31, 1923. The Commissioner, in a letter dated July 17, 1929, advised the taxpayer of his determination of the income tax liability of the affiliated group for the fiscal years ending 1920, 1921, 1922, and 1923 and for the period May 1, 1923, to August 31, 1923. In this letter he proposed deficiencies of $64,722.60 for 1920, $238,478.50 for 1921, and no additional taxes for 1922, 1923, and the period May 1 to August 31, 1923. The statement attached to the letter showed a tax liability of $168,-745.89 for 1920, $419,720.97 for 1921, consolidated net losses in 1922, 1923, and for the four-month period ending August 31, 1923, and an overassessment of $12,200.33 for 1923, barred by the statute of limitations.

On September 12, 1929, the members of the affiliated group executed a closing agreement in pursuance of section 606 of the Revenue Act of 1928 (26 USCA § 2606), covering their income and profits tax liability for the periods above mentioned. This agreement provided, in part:

"Whereas, there has been a determination of the tax liability of said taxpayers in respect of income and profits tax for the said periods listed above (fiscal years 1920, 1921, 1922, 1923 and period May 1, 1923, to August 31, 1923) in the principal sum of six hundred thousand six hundred sixty-seven dollars and nineteen cents ($600,667.19) and

"Whereas, said taxpayers hereby agree to this determination and consent to the assessment and collection of any deficiency in tax included in the amount of the principal tax liability so determined, together with any penalty or interest applicable thereto as provided by law, and/or to accept any abatement, credit or refund made in accordance with such determination, together with any interest due thereon as provided by law.

"Now, This Agreement Witnesseth that said taxpayers and said Commissioner of Internal Revenue hereby mutually agree that the principal amount of such liability so determined shall be final and conclusive if and when this agreement is approved by the Sec-retary of the Treasury or the Undersecretary."

The agreement was executed by the Acting Commissioner of Internal Revenue, and approved by the Secretary of the Treasury on October 21, 1929.

Thereafter the Commissioner computed the income tax liability of the taxpayer for the last four months of 1923 on the basis of a separate return, and assessed the deficiency involved in this case.

The loss sustained during the four-month period included in the closing agreement is admitted to be outside the provisions of sections 937, 2117, of 26 USCA, permitting deduction from the taxable gains of the next two succeeding taxable years. But, if it is held that the last eight months of 1923 constitute but one taxable period, and the Commissioner was without authority to agree that any lesser period of time should constitute a separate tax period, the net loss sustained in the first four months thereof will largely offset the net income for the remainder of the calendar year upon which the deficiency involved was determined. Consequently, the importance of the scope and effect of the closing agreement becomes apparent.

The petitioner contends, first, that the statute does not authorize the Commission-er to enter into an agreement that a period of less than one year should constitute a separate tax period; secondly, that the agreement did not undertake to fix the period, May 1 to August 31, 1923, as a separate taxable period, and, if it did, such agreement was based upon a misrepresentation of a material fact.

Section 606 of the Revenue Act of 1928 (26 USCA § 2606) authorizes the Commissioner to enter into written agreements with any taxpayer respecting his liability as follows:

"Sec. 606. Closing Agreements

"(a) *Authorization.* The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement.

"(b) *Finality of Agreements.* If such agreement is approved by the Secretary or

the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

"(1) The case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

"(2) In any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

The statement accompanying the Commissioner's letter of July 17, 1929, itemized the tax liability or net loss accruing during each stated period named therein. It explained the consideration given the taxpayer's consolidated return covering the last eight months of 1923 and reflected the treatment of the period, May 1, to August 31, 1923, on a basis separate and distinct from the succeeding four months. The Commissioner found that there was no taxable income during the period May 1 to August 31, 1923.

That the closing agreement entered into following the Commissioner's determinations contemplated a final and conclusive settlement of the liability of the taxpayer for the period of May 1 to August 31, 1923, as well as the taxable years preceding it, cannot be seriously doubted. The only reasonable inference to be drawn from the facts is that the Commissioner was willing and the company desired by agreement to conclude all matters pertaining to the taxpayer's liability up to August 31, 1923. Presumably the taxpayer found it to its interest to foreclose further inquiry into and possible redetermination of its liability for those months on the basis of a separate taxable period. The object naturally to be attained by the agreement was the termination of all further tax inquiries up to the time the books of the affiliates were finally closed.

■ The purpose of the statute authorizing closing agreements is to enable the taxpayer and the government finally and completely to settle all controversies in respect of the tax liability for any previous taxable period, and to protect the taxpayer against the reopening of the matter at a later date, and to prevent the filing of additional claims for refund or the institution of suit for the same

purpose by the taxpayer. Perry v. Page (C. C. A. 1) 67 F.(2d) 635; Hering v. Tait (C. C. A. 4) 65 F.(2d) 703; Bankers' Reserve Life Co. v. United States (Ct. Cl.) 42 F.(2d) 313; Ætna Life Ins. Co. v. Eaton (C. C. A. 2) 43 F.(2d) 711; Parish & Bingham Corp. v. United States (Ct. Cl.) 44 F.(2d) 993.

■ Article 1301, Regulation 74, of the Treasury Department, Revenue Act of 1928, provides that such agreements may relate to the total tax liability of the taxpayer or to one or more separate items affecting the tax liability of the taxpayer, such as "the amount of gross income, deductions for losses, depreciation, depletion, etc., or to the value of property on a basic date." The statute and these regulations do not expressly exclude from the scope of a closing agreement the determination that a specific period of less than one year shall constitute a separate taxable period, if the parties so agree. To facilitate the settlement of many items affecting a taxpayer's liability, the policy has been to broaden, rather than limit, the scope of these settlements. It is true, the revenue acts have consistently assessed income taxes on the basis of annual accounting periods, either the calendar or fiscal year, and the provisions of the taxing statutes have been enacted with reference to such normal accounting periods. Helvering v. Morgans, Inc., 293 U. S. 121, 55 S. Ct. 60, 79 L. Ed. ——; Burnet v. Sanford & Brooks Co., 282 U. S. 359, 363, 51 S. Ct. 150, 75 L. Ed. 383; Woolford Realty Co., Inc., v. Rose, 286 U. S. 319, 326, 52 S. Ct. 568, 76 L. Ed. 1128. The desirability of such practice is obvious. But there is no authority for the proposition that the Commissioner and the taxpayer cannot by mutual agreement determine and finally conclude all matters affecting the liability of the taxpayer for a period less than an annual accounting period.

The statute excludes mistakes of fact as well as of law as grounds for the rescission of closing agreements. Only fraud, malfeasance, or misrepresentation are mentioned as bases for attacking them. In recognition of their conclusive character on all matters agreed upon, it has been held that, where the tax covered by the agreement has been assessed under a section of the Revenue Act later declared to be unconstitutional, the closing agreement, nevertheless, was binding and conclusive upon parties. Ætna Life Ins. Co. v. Eaton (C. C. A. 2) 43 F.(2d) 711, 714; Bankers' Reserve Life Ins. Co. v. United States (Ct. Cl.)

42 F.(2d) 313; Great Southern Life Ins. Co. v. United States (Ct. Cl.) 42 F.(2d) 319; Hering v. Tait (C. C. A. 4) 65 F.(2d) 703, 706. In Ætna Life Ins. Co. v. Eaton, supra, the court said: "There can be no doubt that the taxpayer could adjust a claim for repayment of taxes collected under a provision of law afterwards held to be unconstitutional, and we can see no reason why a statute cannot provide that a settlement with a taxing official shall embrace all matters affecting an assessment. If Ætna had not wished to prevent the presentation of future claims in reassessments by the Commissioner, it doubtless would not have executed the closing agreement. Having done so, it was necessarily bound by the consequences of such a mutual undertaking."

Full consideration dictates that matters affecting the taxpayer's liability once concluded by a closing agreement should be respected in every particular, and subject to attack only upon the grounds enumerated in the statute. If the harsh results attendant upon a tax levied and collected illegally under a statute later declared to be unconstitutional cannot be avoided when the subject of a closing agreement, certainly the settlement of tax liability for a period of less than one year presents no stronger case for rescission.

The policy of establishing the finality and conclusiveness of closing agreements once effected, except upon a showing of fraud or malfeasance or misrepresentation of a material fact, has proven efficacious in encouraging the compromise of troublesome tax matters. To allow the finality of such agreements to be impeached upon grounds other than those enumerated in section 606 (b) of the Act (26 USCA § 2606 (b) would tend to diminish the salutary effects of the statute.

 The taxpayer contends further that, if this court finds that the agreement undertakes to fix the period, May 1 to August 31, 1923, as a tax period, such agreement was based upon the misrepresentation of a material fact contained in the report of the revenue agent to the Commissioner to the effect that the taxpayer absorbed the subsidiary companies on August 31, 1923. There is no showing, however, that the Commissioner relied upon the agent's representation that affiliation ceased as of that date in his treatment of the first four months for which a consolidated return was filed as a separate taxable period. And there is no proof that in his redetermination of the taxpayer's liability for the fiscal years 1920 to 1923 inclusive, and the period May 1 to August 31, 1923, which formed the basis of the closing agreement, the Commissioner misrepresented any material fact inducing the taxpayer to sign the agreement. The itemized statement fully advised it that the four-month period had been audited on a basis separate and distinct from the remainder of the calendar year. The fraud, malfeasance, or misrepresentation which the statute contemplates must be that of the party claiming under the agreement. Hering v. Tait (C. C. A. 4) 65 F.(2d) 703; Hyde v. United States (Ct. Cl.) 59 F.(2d) 302.

The decision of the Board of Tax Appeals is affirmed.