## UNITED STATES v. BANK OF COMMERCE & TRUST CO.

No. 60.

District Court, W. D. Tennessee, W. D.

May 7, 1940.

C. P. J. Mooney, Asst. U. S. Atty., of Memphis, Tenn., and Stephen Angland, Department of Justice, of Washington, D. C., for plaintiff.

Phil M. Canale and W. G. Boone, both of Memphis, Tenn., for defendant.

MARTIN, District Judge.

The complaint in this cause was filed by the United States of America on November 1, 1939, and was served on the defendant, Bank of Commerce and Trust Company, on the same date. The plaintiff seeks judgment for Eight Thousand, Eight Hundred Twenty-Four Dollars and Sixteen Cents ($8,824.16), plus interest from December 15, 1932, on account of the non-payment by the defendant of its fourth quarterly installment of income tax for the calendar year 1931.

The defendant denies liability for the payment of the tax, and also pleads the statute of limitations against its collection.

On March 14, 1932, the defendant filed its consolidated income tax return for the year 1931, disclosing a tax liability of Thirty-Five Thousand, Two Hundred Ninety-Six Dollars and Sixty-Three Cents ($35,296.63); whereof, the first quarterly instalment was paid at the time of the return, and two additional quarterly instalments were subsequently paid.

On May 12, 1932, the Commissioner of Internal Revenue signed the assessment list, showing the amount of tax due to be the amount returned by the tax payer, with a credit for the first quarterly payment, leaving a balance due in the amount of Twenty-Six Thousand, Four Hundred Seventy-Two Dollars and Forty-Eight Cents ($26,472.48). The defendant included in its income tax return a discount of One Hundred Eleven Thousand, Four Hundred and Ninety-Three Dollars ($111,493) on bonds issued by the Tennessee Joint Stock Land Bank and the Mississippi Joint Stock Land Bank, representing a repurchase of the bonds at less than par value.

These Joint Stock Land Banks were organized under the Farm Loan Act of 1916, 39 Stat. 360, 12 U.S.C.A. § 641 et seq. On April 3, 1933, the general counsel of the Bureau of Internal Revenue ruled, in the case of Des Moines Joint Stock Land Bank, that the discount on its own bonds purchased during the taxable year constituted exempt income and was, therefore, non-taxable. Following this ruling, the Federal Farm Loan Bureau of the Treasury Department, in a bulletin letter of May 2, 1933, notified all Joint Stock Land Banks "that the discount on your bonds purchased during the taxable year constitutes exempt income and is, therefore, non-taxable."

From examination of the defendant's income tax return for 1930 and 1931, tax deficiencies, protested by the defendant, were proposed by the Commissioner in the respective amounts of Twelve Thousand and Forty-Seven Dollars and Eighteen Cents ($12,047.18) for 1930, and Fourteen Thousand, Seven Hundred Ninety-Three Dollars and Sixty-Nine Cents ($14,793.69) for 1931. No change was made by the Commissioner with respect to the item representing discount on the Joint Stock Land Bank Bonds.

In conformity with customary procedure, a conference followed between representatives of the tax payer and of the Bureau of Internal Revenue, as a result of which the defendant was allowed to deduct a large loss of Two Hundred Nineteen Thousand, Seven Hundred and Thirteen Dollars and Nine Cents ($219,713.09) for 1930, on the Willetts Wood Products Company Bond foreclosure, thereby changing the proposed deficiency for 1930 from Twelve Thousand and Forty-Seven Dollars and Eighteen Cents ($12,047.18) to an over-assessment

944

of Fourteen Thousand, Three Hundred and Eighteen Dollars and Thirty-Nine Cents ($14,318.39), making a total change of tax liability in the amount of Twenty-Six Thousand, Three Hundred Sixty-Five Dollars and Fifty-Seven Cents ($26,365.57). The proposed deficiency, as suggested by the Commissioner, for the year 1931, was sustained in the conference.

On the basis of the result of the conference, reducing the income tax liability of the tax payer for the year 1930, and increasing it for the year 1931, as determined, the defendant, Bank of Commerce & Trust Company, and the Commissioner of Internal Revenue entered into a closing agreement under Section 606 of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev.Code, § 3760, signed by the defendant on March 4, 1933, and by the Commissioner of Internal Revenue on March 17, 1933, and ratified by the Executive Committee of the defendant on March 10, 1933.

The tax deficiency for 1931, in the amount of Fourteen Thousand, Seven Hundred Ninety-Three Dollars and Thirty-Nine Cents ($14,793.39), plus interest, was assessed and paid by the application of the over-assessment for 1930 in the amount of Fourteen Thousand, Three Hundred Eighteen Dollars and Thirty-Nine Cents ($14,318.39), plus interest, plus One Hundred Thirty-Seven Dollars and Eighteen Cents ($137.18) paid in cash on April 17, 1933.

On September 30, 1933, the committee in charge of liquidation of the defendant bank and trust company filed refund claims of Fifteen Hundred Dollars ($1,500) and Thirteen Thousand, Three Hundred Seventy-Nine Dollars and Sixteen Cents ($13,379.16) for the years 1930 and 1931, respectively. Notice of the rejection of these claims was mailed July 30, 1935, and the claims were officially rejected by a letter dated August 13, 1935.

On October 6, 1937, the defendant filed an offer of compromise of One Thousand Dollars ($1,000), in full of the government's claim. This compromise offer was on Treasury Form 656 and contains the following provision:

"The proponent hereby expressly waives:
* * *

"2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending and for one year thereafter."

The Commissioner of Internal Revenue, by letter of March 31, 1938, rejected the compromise offer of the defendant, which has constantly, since September 30, 1933, denied liability for the tax claimed as due by the government; and has asserted its position that its tax for the year 1931 was, in fact, overpaid.

It is apparent that if the income of the defendant for the year 1931, as finally determined, had been reduced by the amount of $111,493, representing discount on Joint Stock Land Bank Bonds, the income tax liability of the defendant would have been Thirteen Thousand, Three Hundred Seventy-Nine Dollars and Sixteen Cents ($13,379.16) less than the amount assessed and now demanded by the government and the defendant would have received a refund of Four Thousand, Five Hundred Fifty-Five Dollars ($4,555).

The record reveals no evidence whatever of any fraud, misrepresentation, or malfeasance by the government or any of its representatives in the procurement of the closing agreement executed between the defendant tax payer and the Commissioner of Internal Revenue in March 1933.

(1) First, the defendant tax payer contends that the action of the Commissioner, in collecting income tax on One Hundred Eleven Thousand, Four Hundred Ninety-Three Dollars ($111,493), representing discounts on the Joint Stock Land Bank Bonds, has resulted in unjust enrichment of the United States to the extent of Four Thousand, Five Hundred Fifty-Five Dollars ($4,555), even after eliminating the Eight Thousand, Eight Hundred Twenty-Four Dollars and Sixteen Cents ($8,824.16) for which the government has brought this suit.

The defendant urges that, under Stewart v. United States, 9 Cir., Aug. 30, 1939, 106 F.2d 405, realized gain from discounts on the land bank bonds is exempt from taxation; and that, upon the principle of Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, the government is not entitled to retain money wrongfully exacted as taxes.

The argument is that, by the authority both of the Bull case and of Crossett Lumber Co. v. United States, 8 Cir., Feb. 8, 1937, 87 F.2d 930, 109 A.L.R. 1348, an ac-

tion to recover taxes is in the nature of an action for money had and received, and is governed by equitable principles, even though in form an action at law; from which it follows that the suitor cannot recover unless it be shown that in good conscience he is properly entitled to the money sought from the defendant. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859, is also cited by defendant's counsel as authority for their contention.

The government replies that the question whether discounts received from Joint Stock Land Bank bonds are taxable has not been finally answered; that on March 25, 1940, 60 S.Ct. 711, 84 L.Ed. ——, the Supreme Court granted certiorari in Stewart v. United States, supra, relied on by defendant; and that where the tax payer was fully acquainted with all relevant facts when the income tax was paid, tax waivers were not invalid because given in ignorance of the right waived, this having been held with respect to the statute of limitations in Clifton Mfg. Co. v. United States, 4 Cir., 76 F.2d 577.

But the government stands firmly upon the ground that the closing-agreement covering the 1931 taxes, executed between the parties to this litigation in March 1933, has forever precluded the right of the defendant tax payer to question the amount of taxes agreed upon in the closing agreement.

■ If the position of the government upon this proposition of law is correct and this action was seasonably instituted, the government is undoubtedly entitled to recover. The conclusion has been reached that the closing agreement is binding upon the tax payer and cannot be annulled, modified, set aside, or disregarded by this district court. This conclusion follows from the plain language of the statute, the position of the government being well buttressed by the authorities.

The statute of the United States, with reference to closing agreements, will be found in U.S.C.A.Int.Rev.Code, Title 26, § 3760, 53 Stat. 462, being Sec. 606 of the Revenue Act of 1928:

"A[a]. Authorization. The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

"B[b]. Finality. If such agreement is approved by the Secretary, the Under Secretary, or an Assistant Secretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

"(1) The case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

"(2) In any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

In Wolverine Petroleum Corporation v. Commissioner of Internal Revenue, 8 Cir., 75 F.2d 593, 595, the Court said: "The purpose of the statute authorizing closing agreements is to enable the taxpayer and the government finally and completely to settle all controversies in respect of the tax liability for any previous taxable period, and to protect the taxpayer against the reopening of the matter at a later date. * * * To facilitate the settlement of many items affecting a taxpayer's liability, the policy has been to broaden, rather than limit, the scope of these settlements."

The Third Circuit Court of Appeals, in Kehoe v. Commissioner of Internal Revenue, June 27, 1939, 105 F.2d 552, quotes with approval the language just quoted and adds: "Congress reenacted the provision of this section in subsequent revenue acts [26 U.S.C.A.Int.Rev.Code, § 3760(b)], realizing the wisdom of allowing and encouraging final compromises and settlements. This enactment should not lightly be disregarded by the courts, since it has always been the policy of the law to encourage compromises and settlements." 105 F.2d page 554.

In Aetna Life Ins. Co. v. Eaton, 2 Cir., 43 F.2d 711, the court refused to set aside a closing agreement, even where the tax had been collected under void and unconstitutional legislation.

■ It is manifest from a study of the language of the statute that mistakes of fact, as well as mistakes of law, are excluded as grounds for the rescission of closing agreements. The statute provides

in express language that the closing agreement shall be final and conclusive "except upon a showing of fraud or malfeasance, or misrepresentation of a material fact". This literal interpretation of the statute has been applied in the following cases: Bankers Reserve Life Ins. Co. v. United States, Ct.Cl., 42 F.2d 313; Great Southern Life Ins. Co. v. United States, Ct.Cl., 42 F.2d 319; Hering v. Tait, 4 Cir., 65 F.2d 703.

In Hyde v. United States, Ct.Cl., 59 F.2d 302, it was held that a tax payer could not avoid the effect of a closing agreement on account of misrepresentations made by others than agents of the government. See to same effect Hering v. Tait, supra, and Wolverine Pet. Corp. v. Commissioner, supra.

In the last cited case, Judge Woodrough, at page 596 of 75 F.2d, of the opinion, says pointedly: "Full consideration dictates that matters affecting the taxpayer's liability once concluded by a closing agreement should be respected in every particular, and subject to attack only upon the grounds enumerated in the statute."

Commissioner of Internal Revenue v. Ingram, 3 Cir., 87 F.2d 915, 916, approves the succinct saying of the Board of Tax Appeals: "Congress intended that innocent mistakes should be buried in a closing agreement."

(2) The defendant insists vigorously that this suit is barred by the statute of limitations, because it was not filed until November 1, 1939; while the true interpretation of the statute requires that it should have been commenced on or before March 31, 1939. In support of this position, the following authorities are cited: Hoosac Mills Corp. v. Commissioner of Internal Revenue, 1 Cir., Jan. 31, 1935, 75 F.2d 462; Welch, Collector, v. Schweitzer, 9 Cir., Oct. 14, 1939, 106 F.2d 885; Helvering v. Ethel D. Co., April 9, 1934, 63 App.D.C. 157, 70 F.2d 761; United States v. Havner, 8 Cir., Jan. 31, 1939, 101 F.2d 161; United States v. Southern Lumber Co., 8 Cir., 1931, 51 F.2d 956; Clifton Mfg. Co. v. United States, 4 Cir., April 2, 1935, 76 F.2d 577; Bertelsen & Petersen Engineering Co. v. United States, 1 Cir., Aug. 2, 1932, 60 F.2d 745.

All of these opinions have been examined, but are not found to force the conclusion urged by the attorneys for the defendant. On the contrary, the decisions from the Eighth Circuit which are cited seem to uphold the government's contention.

In United States v. Havner, supra, the court said (101 F.2d page 163): "The Government contends that the effect of the three separate waivers was cumulative and served to extend the six-year period for the collection of the taxes by two years, two months, and seventeen days; the first waiver tolling the statute for six months and ten days; the second, for six months and four days; and the third, for fourteen months and three days. * * * We think that the Government's contention must be sustained. The purpose of giving a waiver in connection with an offer in compromise is to enable the Government to consider the offer without suffering prejudice because of the running of the statute of limitations against collection of the tax while the offer is being considered. The taxpayer, in submitting such an offer and waiver, in effect requests the Government to withhold attempts to collect the tax while the offer is pending, and, in consideration of this forbearance on the part of the government, consents to forego the benefit of having the statute of limitations run while his offer of settlement is pending. * * * [page 164 of 101 F.2d] Where successive waivers have been given to the government by the taxpayer for the purpose of tolling the statute of limitation, it has been held that the parties intended that the statute should be suspended over the entire period covered by such waivers." The court cites W. P. Brown & Sons Lumber Company v. Burnet, Commissioner of Internal Revenue, 282 U. S. 283, 287, 51 S.Ct. 140, 75 L.Ed. 343; Mosier v. Goodcell, D.C., 49 F.2d 391, 392, 393; Crucible Steel Casting Co. v. Commissioner, 7 Cir., 66 F.2d 82; Liberty Baking Co. v. Heiner, 3 Cir., 37 F.2d 703, 704; Thiel Service Co. v. Commissioner, 7 Cir., 50 F.2d 173, 174.

Not only in United States v. Southern Lumber Co., supra, but in Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788, and numerous other cases, it has been held that statutes of limitations sought to be applied to bar rights of the government must receive a strict construction in favor of the government. Bowers v. New York & Albany, etc., Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676; W. P. Brown & Sons Lumber Co. v. Commissioner of Internal Revenue, 6 Cir., 38 F.2d 425.

Indeed, with respect to the identical statute of limitation under consideration

(Sec. 276(c) of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev.Code, § 276(c) the Court of Appeals in United States v. Havner, supra, said that: "It is true that such a provision, when contained in a taxing statute, is to be construed liberally in favor of the taxpayer [citing cases], but, since there is no ambiguity in the language of the section with which we are concerned, there is no room for construction [citing cases]." 101 F.2d page 165.

The exact language of the statute is: "Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

The provision with respect to waiver of the statute of limitations, contained in the offer of compromise signed by the defendant in the instant case, has been quoted in full earlier in this opinion. The waiver states distinctly that the running of the statute of limitations is suspended for the period during which the offer is pending, and for one year thereafter.

■ Definite and unambiguous statements made by a tax payer in a written waiver of the statute of limitations must be given effect where made for the purpose of affording the tax payer opportunity for favorable action on his claim for credit on his tax. S. S. Pierce Co. v. United States, 1 Cir., Dec. 8, 1937, 93 F.2d 599.

■ It seems settled that the date when the Commissioner of Internal Revenue signs the assessment list in each case must be considered as the date of his official action in making the assessment. Welch Ins. Agency v. Brast, Collector, 4 Cir., 55 F.2d 60; Davidovitz v. United States, Ct.Cl., 58 F.2d 1063.

■ By this token, in the instant case the date of the assessment was May 12, 1932. Had no waiver agreement been signed by the tax payer, the statute would have expired six years from that date, or on May 12, 1938.

By virtue of the waiver signed by the defendant on October 6, 1937, the statute was suspended from that date until March 31, 1938, the date of rejection of the defendant's offer. The time during which the statute of limitation was thus suspended totaled One Hundred and Seventy-Six (176) days. To this One Hundred and Seventy-Six (176) days must be added the additional one-year period of further extension of the statute which the tax payer, by the terms of his signed waiver hereinbefore quoted, expressly agreed should be given. One year and One Hundred Seventy-Six (176) days from May 12, 1938, would be November 4, 1939. This suit was filed on November 1, 1939; and was, therefore, timely within a correct interpretation of the statute of limitations.

The plaintiff, United States of America, is awarded judgment against the defendant tax payer for Eight Thousand, Eight Hundred Twenty-Four Dollars and Sixteen Cents ($8,824.16), plus appropriate interest, and costs.