THOMAS J. INGRAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56943. Promulgated July 31, 1935.

*Floyd F. Toomey, Esq.*, and *A. G. Wallerstedt, Esq.*, for the petitioner.

*James R. Johnston, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The respondent set aside a closing agreement with the petitioner and determined a deficiency of $11,046.70 for 1927, together with a 5 percent negligence penalty of $552.34. The petitioner relies upon the closing agreement for a decision that there is no deficiency or penalty.

It is not suggested that the closing agreement is on its face lacking in any essential to its validity under section 606(a) or (b), Revenue Act of 1928,[1] but the controversy turns upon the question whether there has been such " a showing of fraud or malfeasance, or misrepresentation of a material fact" as to support the statutory exception to the rule that the agreement shall be final and conclusive and shall not be set aside or disregarded.

The respondent argues that since, in the deficiency notice, it is said that " the Secretary of the Treasury has approved the setting aside of the final closing agreement entered into for the year 1927 ", this must be taken as an official factual determination of fraud or malfeasance, or misrepresentation of a material fact; and upon this proposition is superimposed the doctrine that since any official factual determination in respect of the deficiency is presumed to be correct, the burden of proof is thus cast upon the petitioner to prove otherwise. In other words, the respondent, by merely setting aside a closing

---

[1] SEC. 606. CLOSING AGREEMENTS.

(a) *Authorization.*—The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement.

(b) *Finality of agreements.*—If such agreement is approved by the Secretary, or the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and .conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

agreement, would require the petitioner to establish, by a preponderance of evidence, the negatives of fraud, malfeasance, and misrepresentation of a material fact; and this, although in the notice of deficiency the Commissioner omitted any express determination of fraud, malfeasance, or material misrepresentation in the making of the closing agreement, but expressly stated that " the understatement of tax for the year 1927 is attributable to negligence ", and added the 5 percent penalty. In these circumstances, we think that the taxpayer may fairly expect the Government to prove the exceptional fact which will support setting aside the closing agreement. There is no reason to interpret the statute as requiring him in the first instance to negate every possibility of fact or inference which might support the abrogation of the agreement. Clearly, as to fraud, the burden is expressly placed upon the Commissioner.[2] As to malfeasance or misrepresentation, the statute is silent as to the burden. But the only rule consistent with the general statutory purpose of finality in closing agreements is that he who seeks to set one aside under the exception must prove the fact upon which the exception is conditioned.

But the respondent argues as if an understatement in the return (treated by him in this case as fraudulent) meets the exception. He marshals his evidence not so much to prove fraud or misrepresentation in the agreement as to prove culpable understatement in the return. This, we think, is unsound. It is conceivable that a tax liability including penalty for a fraudulent return may be consciously closed by an agreement under section 606. Where, as here, after the recital of a categorical figure of tax liability there is an agreement that such liability shall be final and conclusive, there must be a showing of infirmity in the agreement itself. A faulty return, even though fraudulent, is, while not without significance, not alone determinative. Needless to say, this rule is reciprocally applicable whether the agreement is sought to be abrogated by the taxpayer who has agreed to pay too much or by the Commissioner who has agreed to too little.

The evidence in the present proceeding we think is insufficient to support a finding necessary to set aside the agreement. We can not find fraud, malfeasance, or misrepresentation of a material fact in the making of the agreement. It is true, and admitted by the taxpayer, that upon his return gross income was understated. The petitioner testified that the omission was unintended, and, from the

[2] Sec. 601. [Amending sec. 907 (a) of Revenue Act of 1924.] * * * In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, where no bearing has been held before the enactment of the Revenue Act of 1928, the burden of proof in respect of such issue shall be upon the Commissioner. * * *

facts and circumstances in evidence showing how the books were kept and the return made, we find no reason to doubt either the honesty or the credibility of this testimony. Even the revenue agent who finally discovered the error reported to the Commissioner that there was no evidence of fraud or malfeasance, that the taxpayer " is a man of the highest type of business integrity ", that all books and records were unhesitatingly produced, and that there was in his opinion no warrant for a fraud investigation. But the respondent argues that this still leaves the omission in the return and the nondisclosure at the time of the closing agreement within the statutory term of " misrepresentation of a material fact." His argument would treat misrepresentation as synonymous with mistake. While there is a subtle question of language in the distinction between a mistaken or erroneous statement and a misrepresentation, this must be resolved to promote the purpose of the statute. Obviously the use of the word misrepresentation denotes something more deliberate or more conscious than mere error or mistake. Otherwise the entire rationale of a closing agreement would be lost. Congress intended that innocent mistakes should be buried in a closing agreement. *Bankers' Reserve Life Co.* v. *United States*, 42 Fed. (2d) 313; *Aetna Life Insurance Co.* v. *Eaton*, 43 Fed. (2d) 711; *Wolverine Petroleum Corporation* v. *Commissioner*, 75 Fed. (2d) 593. This still leaves an ample field for protection against an agreement founded in trickery or deception. While we make no attempt to define the boundaries of the " misrepresentation of a material fact " prescribed by the statute, we hold that it is at least exclusive of mere incorrect, erroneous, or mistaken statement, *Wolverine Petroleum Corporation* v. *Commissioner*, *supra*. *Phoenix Insurance Co.*, 29 B. T. A. 291. Cf. G. C. M. 7549, IX C. B. 164.

The evidence in the present proceeding, in our opinion, discloses no more than an erroneous omission of certain items of income from the taxpayer's return, and, as to the agreement, it discloses no more than an innocent willingness to enter into such an agreement. Whether the agreement was sought by the taxpayer or by the Government does not clearly appear, although the indications point more to the Government as the proposer than to him.

In view, therefore, of the existence of the closing agreement and of the nonexistence of facts sufficient to support its setting aside, we hold that there is no deficiency and no penalty for 1927, and reverse the respondent's determination.

*Judgment will be entered for the petitioner.*