**Benjamin J. ANDREWS, Jr., Frances C. Andrews, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 90–CV–724A.**

United States District Court, W.D. New York.

Sept. 17, 1992.

Kenneth Bersani, Gough, Skipworth, Summers, Eves & Trevett, PC, Rochester, N.Y., for plaintiffs.

Steven E. Cole, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## ORDER

ARCARA, District Judge.

This Court, having carefully reviewed Magistrate Judge Carol E. Heckman's Report and Recommendation of August 13, 1992, as well as the pleadings and materials submitted by both parties; and no objections having been timely filed to the

Magistrate Judge's Report in the above-captioned matter, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), the Magistrate Judge's Report and Recommendation is accepted in its entirety.

IT IS FURTHER ORDERED that the Government's motion for summary judgment is granted. Further, that the Clerk of the Court is directed to enter final judgment in favor of the Government and against the plaintiff.

It is so ordered.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

In this case, Plaintiffs seek to estop the Government from collecting taxes which are admittedly due, arguing that they relied on the erroneous advice of an IRS employee. For the reasons set forth below, it is recommended that summary judgment be granted to the Government.

This matter was referred to the undersigned by the Hon. Richard J. Arcara to hear and report on Defendant's motion for summary judgment, pursuant to 28 U.S.C. § 636(b)(1)(B). The following constitutes the undersigned's proposed findings and recommendations for the disposition of the motion.

### FACTS

In accordance with Local Rule 25, the Government filed a Statement of Undisputed Facts as part of its motion for summary judgment. Plaintiffs, however, failed to comply with Local Rule 25. Since Plaintiffs have not controverted Defendant's statement, the material facts set forth in that statement are deemed admitted for purposes of this motion. Rule 25, Local Rules of the Western District of New York.

This suit was filed under § 7422 of the Internal Revenue Code to recover income taxes and interest alleged to be erroneously collected by the IRS for the tax years 1978 through 1982. Plaintiff Benjamin J.

Andrews, Jr. is an attorney, and Plaintiff Frances C. Andrews is his wife. In their original Form 1040 for tax year 1980, Plaintiffs claimed a loss of $27,321 for an investment in a partnership known as "Lighthouse Hill Associates" ("LHA"). The Plaintiffs claimed a deduction of $30,137 in 1979 for this partnership, and of $52,500 in 1978 for another partnership loss.

The Internal Revenue Service subsequently audited these returns, as well as the returns for 1981 and 1982. On April 6, 1984, the Andrews' received a statutory Notice of Deficiency for the year 1980, stating that Plaintiffs owed an increase of tax for that year in the amount of $10,953. This Notice of Deficiency was based primarily upon the full disallowance of the loss Plaintiffs had claimed for LHA (Gov't Ex.A, attached to Defendant's Memorandum in Support of Motion for Summary Judgment, Item 9).

Plaintiffs then petitioned the United States Tax Court for a redetermination of this deficiency, claiming that the IRS disallowance of their $27,321 deduction relating to LHA was erroneous. On October 31, 1984, this petition was dismissed as untimely (*id.*, Gov't Exs.B & C).

On May 10, 1985, the IRS assessed the $10,953 tax deficiency (plus interest) against the Plaintiffs for 1980. Plaintiffs then filed a Form 1040X, Amended U.S. Individual Income Tax Return for 1980, wherein they claimed that their tax assessment of $10,953 should be reduced to $8,347, representing allowance by the IRS of a deduction for Plaintiffs' out-of-pocket expenditures for the partnership, as well as a deduction for $672 for income which was turned over to Mr. Andrews' law firm (then Saperston & Day) (*id.*, Gov't Ex.D). According to this Form 1040X, Plaintiffs still owed an additional $5,264. This return was accompanied by a cover letter from Plaintiff Benjamin Andrews, which stated:

After you have had an opportunity to examine [the amended return], I trust that you will forward a revised bill, including the breakdown of interest owed.

*Id.*

In the meantime, the IRS began to examine Plaintiffs' 1978, 1979, 1981 and 1982

returns as well. Eventually, all five years were considered together.

On September 26, 1985, Plaintiffs accepted an offer by the IRS to settle their 1980 case for allowance of a deduction in the amount of their out-of-pocket expenses of $7,500 relating to LHA (*id.*, Gov't Ex.E). Plaintiffs also accepted the IRS offer to settle their 1979 tax case for an allowance of a $10,000 deduction for out-of-pocket expenses.

On October 18, 1985, the IRS sent the Plaintiffs a letter informing them that their claim for partial abatement of their 1980 income tax liability had been allowed (*id.*, Gov't Ex.F). Enclosed with this October 18, 1985 letter was a Form 1902–B, Report of Individual Income Tax Examination Changes, reflecting allowance of a deduction for Plaintiffs' out-of-pocket investment of $7,500 to LHA and $673 for non-employment compensation (*id.*, Ex.F, p. 2). The October 18, 1985 letter clearly stated:

A partial abatement is shown on the report enclosed. The remaining balance is due and payable immediately.

(*id.*, Ex.F, p. 1). On the next page, the computation sheet stated that the assessment for 1980 would be reduced by $4,544 as a result of the adjustment, but on another line it erroneously stated that there had been a $4,544 "overpayment." It is this erroneous statement, made three weeks after the settlement was agreed upon, that Plaintiffs rely upon for their claim that all of the liability arising from the settlement should be abated.

On November 1, 1985, Plaintiffs signed Form 906, "Closing Agreement on Final Determination Covering Specific Matters," which was subsequently signed by the IRS on December 6, 1985 (*id.*, Gov't Ex.G). In that agreement, the Plaintiffs were allowed a deduction for out-of-pocket expenses in the amount of $7,500 for investments in LHA for 1980 and $10,000 for 1979. Plaintiffs also executed a closing agreement for 1978 wherein they were allowed out-of-pocket expenses of $15,000 relating to the partnership in that year, as well as closing agreements for 1981 and 1982. Plaintiffs also executed and submitted the examination reports for 1978 through 1982 (*id.*, Gov't Exs.I–M).

Plaintiffs contend, and the Government does not dispute, that they were verbally advised by the IRS agent assigned to their case that the total cost of the settlement, including interest, would be $27,000.[1] In fact, at oral argument, the Government stipulated for purposes of this motion that the IRS employee at some point advised the taxpayers orally that the total amount owed would be $27,000 for all five years. Plaintiffs paid the $27,000, believing that this would resolve the matter entirely.

In July of 1986, the IRS sent Plaintiffs a bill for an additional $12,465 for 1980. This amount was based on the original assessment of $10,953, plus interest, less the abatement of $4,544 and corresponding abated interest.

On September 25, 1986, Plaintiffs filed a second Form 1040X, Amended U.S. Individual Income Tax Return, for the years 1978 through 1982, which stated in pertinent part as follows (*id.*, Gov't Ex.H):

At the time the Andrews settled their case, they requested from the Service a calculation of the tax and interest due for all five years, which was approximately $27,000, and paid this amount prior to the end of 1985.

In 1986, the Andrews were contacted by this Service concerning additional amounts allegedly owed for 1980, 1981 and 1982. They had paid the additional amounts for 1981 and 1982. The amount allegedly owed for 1980 is in suspense. The amounts allegedly owed for 1980, 1981 and 1982 are in excess of those amounts which the Andrews were told would be owed when they settled the case.

The apparent discrepancy is one which was created by the Service. The document which the Andrews signed for 1980 shows that an overpayment is due them in the amount of $4,544. The Service now alleges that an amount in excess of $12,000 is in fact owed for that year.

---

**1.** The closing documents themselves do not specify the total tax bill.

This was not the statement made by the Service to the Andrews at the time that they settled. Instead, they were advised by the Service that the net adjustments would result in an overpayment in 1980 of $4,544, as is reflected in the attached report dated 10/17/85.

## DISCUSSION

Plaintiffs now claim that they were induced to enter into closing agreements with the Internal Revenue Service for the years 1978 through 1982 based on misrepresentations by the IRS as to the total amount due under the settlement agreement with respect to the years in question. The United States has moved for summary judgment on the basis that Plaintiffs cannot, as a matter of law, set aside the closing agreements in question. Furthermore, the United States argues that even if the closing agreements were to be set aside, the Plaintiffs have not claimed, nor may they now attempt to claim, that they are entitled to allowance of deductions in excess of the amounts they were allowed under the settlement agreement. Finally, since Plaintiffs' complaint sounds in estoppel, the Government argues that estoppel will not lie against the United States in matters involving the United States Treasury.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.Rule Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As already discussed, the record in this case leaves all essential facts undisputed, making this case strictly a question of law.

■ The Internal Revenue Code states that the Commissioner "may enter into a closing agreement which, if approved by the designated official, is final and conclusive in the absence of fraud, malfeasance, or misrepresentation." 26 U.S.C. § 7121. For a closing agreement to be set aside for misrepresentation of a material fact, there must be a mutual mistake of fact which is more than a misstatement. "[I]nnocent mistakes should be buried in a closing agreement." *Commissioner v. Ingraham,* 87 F.2d 915, 916 (3rd Cir.1937). A mere mistake of fact or law, whether unilateral or mutual, no matter how material, is not a misrepresentation. *Id.; see also, Cramp Shipbuilding Company v. Commissioner,* 14 Tax Ct. 33 (1950).

■ It is apparent from a review of Form 1902–B (Item 9, Govt. Ex.F) that it contains a mistake. On the cover letter, the document indicates that "a partial abatement is shown on the report enclosed or the remaining balance is due and payable immediately." On the next page, the report contains the mechanical computations showing an adjustment in income in favor of the taxpayer in the amount of $8,173 and an over-assessment in tax in the amount of $4,544. Then, the over-assessment is again entered under the column that is described as "overpayment." It is readily apparent that the IRS employee merely entered this figure on the wrong line and that additional tax was due for the year 1980.

Furthermore, the record in this case shows that Plaintiffs were well aware that they had a net tax due for the year 1980. Plaintiffs agreed to settle their 1978 to 1982 tax cases with the IRS on September 26, 1985, some three weeks prior to the date of Form 1902–B. Form 1902–B merely constituted the mechanical computation based upon the prior settlement agreement. Thus, the alleged misrepresentation made by the IRS could have had no effect upon the Plaintiffs' decision to agree to settle that issue, and cannot provide a basis for a

refund of amounts paid pursuant to the settlement.

Further support for this view is found in the first Form 1040X (Item 9, Gov't Ex.D), filed by Plaintiffs in June of 1985. In their cover letter enclosing the form, Plaintiffs recognized that, even if the IRS allowed their proposed deductions *in full*, additional tax and interest would remain due and owing for 1980. Thus, even if this error amounted to a "misrepresentation," it is apparent that it was not material because the Plaintiffs had previously agreed to the adjustments in the closing agreements and previously acknowledged that additional tax was due.

In response, Plaintiffs have attempted to obfuscate the facts by intimating, but not specifically stating, that the alleged misrepresentations may have occurred prior to September 26, 1985, the date Plaintiffs accepted IRS's offer to settle their 1980 case (Item 9, Gov't Ex.E). However, when specifically questioned on this point at oral argument, Plaintiffs' counsel could only cite the affidavit of Benjamin J. Andrews, dated October 3, 1991, in support of this position. Nothing in the Andrews affidavit provides any time frame when the alleged misrepresentation was made. Moreover, the attachment to Form 1040X (*id.*, Gov't Ex.H), filed by Plaintiffs and quoted above at length, states that the Plaintiffs were told the total cost would be $27,000 *at the time that they settled their case.*

Plaintiffs also contended at oral argument that the document by which Plaintiffs accepted the IRS's offer of settlement (Item 9, Gov't Ex.E) was executed with the implicit understanding that it would not be binding. However, there is nothing in the Andrews affidavit or in any other part of the record which would support this position. To the contrary, as already noted, in June of 1985, Plaintiffs clearly contemplated additional tax due and owing for 1980.

But, even if Plaintiffs had successfully disputed the timing of the alleged misrepresentations, such that they could establish a basis for contending that the closing agreements should be set aside, it would nevertheless be insufficient to defeat the motion for summary judgment. Plaintiffs do not assert that their deductions for losses relating to LHA should have been allowed by the IRS in full. *See Jones v. Liberty Glass Co.*, 332 U.S. 524, 531, 68 S.Ct. 229, 232, 92 L.Ed. 142 (1947). As a matter of law, Plaintiffs cannot establish an overpayment which should be refunded to them.

■ In establishing an overpayment, Plaintiffs are limited to the grounds set forth in their claims for a refund. *See, e.g., United States v. Felt & Tarrant Co.*, 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); *Ronald Press v. Shea*, 114 F.2d 453 (2d Cir.1940). In the second Form 1040X, filed on September 25, 1986, Plaintiffs' sole contention is an estoppel claim—i.e., "[t]he amounts allegedly owed for 1980, 1981 and 1982 are in excess of those amounts which the Andrews were told would be owed when they settled the case" (Item 9, Gov't Ex.H).

■ Thus, Plaintiffs contend that they are entitled to a refund of taxes due for 1980 based on an alleged miscalculation of tax due with respect to the settlement agreement for 1978 to 1982, such that they were induced to settle with the IRS for those years based on incorrect information provided by the IRS. This claim sounds only in estoppel.

This claim must fail for a number of reasons. First, the essential elements of estoppel are missing. *Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). The settlement was agreed upon before the computation was made and therefore there could be no reasonable reliance. In addition, any misrepresentation was one of law—i.e., the legal computation of the agreed upon deduction—not one of fact. Finally, Plaintiffs cannot show that they changed their position for the worse in reliance on advice from the IRS. To the contrary, all indications are that Plaintiffs did know of this IRS mistake because they acknowledged that taxes were due as early as June of 1985 (see Ex.D).

■ But even if the required elements of estoppel were present in this case, estoppel will not lie against the United States under the circumstances presented. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). There, the Supreme Court held that erroneous advice given by a government employee concerning a claimant's eligibility for disability benefits did not estop the Government from denying benefits not otherwise permitted by law. The Court noted that it was undisputed that the award sought by the claimant was in direct contravention of the federal statute. Relying on the Appropriations Clause of the Constitution, the Supreme Court refused to apply the equitable doctrine of estoppel because the payment of public funds had not been authorized by Congress. *Id.*, 496 U.S. at 426, 110 S.Ct. at 2472. The Court stated:

> Extended to its logical conclusion, operation of estoppel against the Government in the context of payment of money from the Treasury could in fact render the Appropriations Clause a nullity. If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the Clause reposes in Congress in effect could be transferred to the Executive.

> .  .  .  .  .

> As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds. In this context there can be no estoppel, for courts cannot estop the Constitution.

*Id.*, 496 U.S. at 428, 434, 110 S.Ct. at 2473, 2476; *accord, Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (government cannot be estopped from recovering medicare overpayments even though recipient relied on express authorization of government agent in making expenditures).

This case is on all fours with *Richmond* and *Heckler*. Here, Plaintiffs cannot show an entitlement under the Internal Revenue Code to the refund they seek. Since Plaintiffs' claim has not been authorized by an Act of Congress, it is prohibited by the Appropriations Clause.

■ The final argument made by Plaintiffs relates to the statute of limitations. Plaintiffs consented to waive the statute of limitations for assessment under 26 U.S.C. § 6501(a) by filing Forms 872–a (Special Consent to Extend the Time to Assess Tax), which consents were terminated by assessments of tax deficiencies for 1978 to 1982. Plaintiffs argue that those assessments were illegal or erroneous, and that because the consents were terminated, it is now too late to make a correct assessment.

This argument is without merit. Plaintiffs must demonstrate that they have overpaid a certain amount of tax in order to be entitled to a refund of that overpayment. Plaintiffs are not entitled to have the entire assessment invalidated. *United States v. Schroeder*, 900 F.2d 1144, 1148 (7th Cir.1990). The case cited by Plaintiffs, *Roszkos v. Commissioner*, 850 F.2d 514 (9th Cir.1988), does not support their theory. *Roszkos* merely held that an invalid notice of deficiency issued by the IRS did not terminate the taxpayer's consent to extend the statute of limitations on assessment. It has no applicability to the facts before this Court.

■ Moreover, Section 6501 does not forbid the Government from collecting and retaining taxes voluntarily paid without assessment and which do not constitute an overpayment. *Ewing v. U.S.*, 914 F.2d 499, 503–504 (4th Cir.1990). Thus, even if the assessments were invalid, because the Plaintiffs voluntarily paid the tax and have not established any overpayment, the Government is entitled to retain those amounts as a matter of law.

For the foregoing reasons, it is recommended that summary judgment be granted to the Government.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after being served with this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.