MONETARY II LIMITED PARTNERSHIP, EDGAR D. OSGOOD, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Monetary II Ltd. Partnership v. Commissioner
Docket No. 2551-88
United States Tax Court
T.C. Memo 1992-562; 1992 Tax Ct. Memo LEXIS 582; 64 T.C.M. (CCH) 869; September 23, 1992, Filed *582 For J. Thomas Hannan, Participating Partner: Curtis W. Berner. For Respondent: Margaret S. Rigg and Bryce A. Kranzthor. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case is before the Court on motion of the participating partner for summary judgment. The participating partner contends that the notice of final partnership administrative adjustment (FPAA) issued by respondent on November 10, 1987, was mailed after the expiration of the period of limitations on April 15, 1987. This contention requires the Court to determine whether the Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, signed by Arthur Lachman (Lachman), as tax matters partner (TMP) of Monetary II Limited Partnership (the partnership), was effective to extend the period of limitations as to all partners. FINDINGS OF FACT The partnership was formed in 1983 to invest in oil and gas properties. The only general partners in 1983 were Lachman and Richard W. Naumann (Naumann), each of whom had a 1.06-percent interest in the partnership. Lachman and Naumann were business partners with offices located at 425 California Street, Suite 2203, San Francisco, *583 California 94104 (Lachman's address). The partnership timely filed its 1983 Federal information return Form 1065, on or before April 15, 1984. In March 1985, Lachman and Naumann resigned from the partnership and, from that time forward, neither held any interest in the partnership. Subsequent to their resignation, the new general partner was Edgar D. Osgood (hereinafter Osgood or petitioner). His business address at that time and thereafter is Pier 23, The Embarcadero, San Francisco, California 94111. On January 30, 1986, respondent mailed the partnership a letter informing it that the partnership's 1983 return had been selected for examination. The letter was addressed to the attention of the TMP and mailed to Lachman's address. On February 25, 1986, the revenue agent assigned to the case contacted Naumann and was informed that Naumann and Lachman were no longer partners in the partnership and the new general partner was Osgood. Subsequently, the revenue agent sent Osgood (via his accountant) an Information Document Request and a Form 872-P. Upon receipt, Osgood contacted the revenue agent and indicated he would not sign the Form 872-P consenting to the extension of the *584 statute of limitations for the partnership's 1983 year from April 15, 1987, to December 31, 1987. On August 22, 1986, the revenue agent met with Osgood and served on him a "summary report" addressed to the partnership at Osgood's address. The first paragraph of the form cover letter stated: We have enclosed a copy of our summary report on the examination of the above-named partnership for you in your capacity as Tax Matters Partner. The letter contained instructions as to how the TMP was to proceed with regard to the examination. Again, petitioner refused to consent to an extension of the period of limitations, and indicated he had no desire to attend a closing conference. In mid-November 1986, Linda N. Fogel (Fogel), a member of the review staff for the San Francisco District Director, contacted Lachman by phone regarding an extension of the period of limitations for the partnership's 1983 year. On November 18, 1986, she sent a Form 872-P to Lachman. Lachman, concerned that he had no authority to act on behalf of the partnership, advised Fogel on December 3, 1986, to contact Osgood for the extension. However, Fogel informed Lachman that he was, in fact, the TMP. As a result *585 of that conversation, Lachman signed the Form 872-P, which provided for the extension of the period of limitations for the partnership's 1983 tax year to December 31, 1987, and mailed it to Fogel. Lachman signed the Form 872-P on the line designated for the signature of the TMP. Moreover, Lachman did not indicate on the Form that he was not signing as TMP or that he had any reservation as to his status. The Form 872-P was executed on behalf of respondent on December 23, 1986. On March 3, 1987, respondent mailed a letter addressed to Lachman as TMP which proposed adjustments identical to those previously proposed in the summary report. Once again, Lachman advised Fogel that he had no authority to act on behalf of the partnership, as he was no longer a partner. He forwarded the letter to Osgood, who in turn forwarded it to his attorney, Jeffrey R. Maso (Maso). Maso contacted Fogel advising her that Lachman had resigned as general partner some years earlier and had no authority to act for the partnership or as its TMP. However; since Maso did not have a power of attorney on file for the partnership, Fogel was unable to discuss the matter in detail with him. On March 4, 1987, *586 Fogel sent Lachman a copy of the newly promulgated regulations relating to the proper designation of the TMP and a new Form 872-P for Osgood to sign upon his designation as the new TMP. Upon subsequent receipt, Osgood forwarded the materials to Maso, who then prepared a notice of designation of TMP designating Osgood as such, which was subsequently signed and mailed to respondent on March 26, 1987. As indicated previously, on November 10, 1987, respondent mailed an FPAA to the partnership addressed to Osgood as TMP. OPINION Generally, the period for assessing any income tax attributable to partnership items for a partnership taxable year expires 3 years after the partnership files its information return for the taxable year in question. Sec. 6229(a). [1] That period may be extended with respect to all partners by an agreement between the Secretary and TMP or any other person authorized by the partnership in writing to enter into such agreement. Sec. 6229(b)(1)(B). *587 The term "TMP" is defined in section 6231(a)(7) as follows: The tax matters partner of any partnership is -- (A) the general partner designated as the tax matters partner as provided in regulations, or (B) if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing). If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner. It is undisputed that at the end of 1983 no general partner was designated as the TMP for the partnership. Therefore, pursuant to section 6231(a)(7)(B), Lachman was the TMP because of the two equal general partners his name would appear first in an alphabetical listing. From the end of 1983 through March 26, 1987, including the time when Lachman signed the Form 872-P, the partnership did not designate a new partner as TMP. Although Lachman advised *588 respondent that he was no longer a partner, he did not officially or formally resign as TMP. (During most of this period, regulations which describe the manner and method in which a TMP may resign were still to be promulgated, see sec. 301.6231(a)(7)-1T(i), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6792 (Mar. 5, 1987).[2] Consequently, Lachman was the TMP when he signed the Form 872-P, and thus, the motion for summary judgment will be denied.
The participating partner argues that the Form 872-P is ineffective for the following reasons: (1) Lachman cannot be the TMP in 1986 as a matter of law because he was no longer a partner in the partnership; (2) as a matter of law, it was impracticable to apply the largest profits interest test, and respondent, therefore, was required to select a TMP other than Lachman pursuant to section 6231(a)(7); *589 and (3) respondent, in effect, selected Osgood as TMP as a result of respondent's knowledge and actions. Section 6231(a)(7)(B) defines a TMP as the general partner having the largest profits interest in the partnership at the end of the taxable year involved. (Sec. 6231(a)(7)(A) is inapplicable in this case.) Thus, section 6231(a)(7)(B) envisions that there may be different TMP's for different tax years, but that such determination is made as of the end of the subject tax year. Under section 6231(a)(7)(B), Lachman was the TMP and remained such until a termination event such as death, resignation, bankruptcy, etc., occurred. The fact that he was no longer a partner when he signed the Form 872-P did not affect his status as TMP with regard to partnership audits and procedures. Section 6231(a)(7)(B) does not require the TMP be a partner at the time of the audit; rather the TMP must have been a partner at the end of the tax year in question. See Montana Sapphire Associates v. Commissioner, 95 T.C. 477, 481 (1990), which held that the managing general partner could not qualify under the statute as TMP because he "was not and is not a partner" *590 (emphasis added). See also Utah Bioresearch 1984, Ltd. v. Commissioner, T.C. Memo. 1989-612, in which the sole general partner, a corporation, although transferring its entire interest in the partnership in 1986, was held to be the TMP until it dissolved as a corporate entity in 1987. Moreover, in Chef's Choice Produce, Ltd. v. Commissioner, 95 T.C. 388 (1990), the former partner contended that the selection of a TMP by respondent and the issuance of the FPAA were nullities due to the dissolution of the partnership under State and Federal law as a result of a petition for bankruptcy. The partner further alleged that neither the partnership nor any of its former partners had the capacity to commence judicial proceedings following such dissolution and termination of the partnership. We stated at 396: We further conclude that the applicability of the partnership audit and litigation procedures is to be determined at the end of the tax year or years with respect to which the FPAA has been issued. The dissolution or termination of a partnership in a year subsequent to the years adjusted by the FPAA has no effect on the *591 outcome of a partnership action filed with respect to the years when the partnership was in existence. We therefore held that respondent's authority to select a TMP existed even though the partnership had been dissolved and its existence had been terminated subsequent to the years for which adjustments were involved. Thus, if a partnership dissolution does not invalidate a partnership proceeding, the termination of a partner's interest in a partnership does not necessarily terminate that person's status as TMP. The participating partner contends that Lachman could not be the TMP for 1986 as a matter of law. In this regard, the participating partner relies on Barbados No. 7 Ltd. v. Commissioner, 92 T.C. 804 (1989), and Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198 (1987). In the latter case, this Court stated, in part: The detailed statutory procedures for partnership level audits and litigation contemplate the continual presence of one tax matters partner, and the procedures cannot operate unless the tax matters partner is capable of acting on the partnership's behalf regardless of his personal tax posture. *592 As the fiduciary of the partnership's interest in the proceeding, the tax matters partner's initiative (or failure to take initiative) is plainly designed to affect the rights of all partners in the partnership. [Id. at 205-206.] Thus, the participating partner argues that since this Court has previously acknowledged that a TMP is a fiduciary of the partnership, it follows that Lachman cannot be a fiduciary since he is no longer a partner. This argument is of no avail to the participating partner. Section 6231(a)(7) defines a TMP, and the regulations identify what constitutes a terminating event. In short, Lachman was a partner and TMP at the end of 1983, and his resignation from the partnership does not constitute an event which terminates his status as TMP. In Barbados No. 7 Ltd. v. Commissioner, supra, we held that an extension signed by a former TMP which had filed a petition in bankruptcy was invalid. The TMP was disqualified under sections 301.6231(a)(7)-1T(1)(4) and 301.6231(c)-7T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6792, 6793 (Mar. 5, 1987) (promulgated after the *593 extension for Barbados' 1983 return was signed). In addition, we held the former TMP was not authorized to act on behalf of the partnership by virtue of applicable Utah law which provides that the dissolution of a partnership (as a result of the bankruptcy of any partner) terminates all authority of any partner to act for the partnership, except insofar as such agency and implied powers may be necessary to the winding up of the partnership's affairs or to complete transactions begun but not yet finished. Barbados is distinguishable because in that case the former TMP was disqualified as the TMP pursuant to the statute and regulations. In contrast, in the instant case, the statute and regulations do not disqualify Lachman as the TMP due to his resignation from the partnership. The participating partner also contends that respondent was required to select a TMP under the provisions of the last paragraph of section 6231(a)(7). Neither the statute, the regulations, nor the legislative history of section 6231(a)(7) defines the impracticability test. See Cambridge Research and Development Group v. Commissioner, 97 T.C. 287, 293 (1991). The language *594 of section 6231(a)(7) leaves the determination of when impracticability exists to respondent, and on this record no such determination was made. Further, we do not believe that respondent's actions constituted the selection of Osgood as the TMP. The revenue agent's discussion of the issues with Osgood is not tantamount to a selection of Osgood as the TMP nor does the correspondence delivered to him, but not addressed to him as the TMP, constitute such a selection. Indeed, respondent's actions have been totally consistent in that communications addressed to the TMP prior to her receipt of Osgood's designation by the partnership as the TMP were directed to Lachman, although in one case, misaddressed. In sum, we conclude that Lachman was the TMP at the time he signed the Form 872-P and that while he may have been misadvised in signing the Form 872-P, it was effective and binding and served to extend the period of limitations until December 31, 1987. Therefore, the FPAA was mailed prior to the expiration of the period of limitations. The motion for summary judgment filed by the participating partner will be denied. An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Court has treated these regulations as retroactive. See Barbados No. 7 Ltd. v. Commissioner, 92 T.C. 804↩ (1989).