In re Guy MILLER, Debtor.

Guy MILLER, Appellant,

v.

INTERNAL REVENUE SERVICE, United States Trustee, Lawrence Loheit, Chapter 13 Trustee, Appellees.

BAP No. EC–93–2330–RVRo.
Bankruptcy No. 93–20639–A–13.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 22, 1994.

Decided Dec. 1, 1994.

Richard Dangler, Sacramento, CA, Curtis W. Berner, San Francisco, CA, for appellant Guy Miller.

Diana P. Nowezki, Washington, DC, Thomas M. Rohall, Sacramento, CA, for appellee I.R.S., U.S.

Before RUSSELL, VOLINN and ROSS [1], Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge:

The debtor objected to the Internal Revenue Service ("IRS") claim on the grounds that the statute of limitations had expired and that consents executed between the tax matter partner and the IRS were invalid. In addition, the debtor attempted to set aside a closing agreement based on an alleged misrepresentation by the IRS. The bankruptcy court overruled the objection to the IRS claim. The debtor appeals. We AFFIRM.

## I. FACTS

The facts are largely undisputed. The debtor/appellant, Guy Miller ("Miller") filed a Chapter 13 petition. The appellee, IRS, sub-

mitted a proof of claim for $104,852.93, plus penalties of $692.33, representing taxes for the years 1980 through 1990.

Miller objected to the IRS claim on the grounds that the applicable statute of limitations for the assessment of the taxes claimed had expired and that the consents to extend the time to assess the income taxes between 1984 through 1990 were invalid. In addition, Miller requested that a closing agreement executed between Miller and the IRS be set aside based on an alleged misrepresentation.

The extensions were signed at the partnership level by the tax matter partner ("TMP"), Walter J. Hoyt, III ("Hoyt"). Hoyt, who had formed the limited partnerships was designated as the TMP in his capacity as the general partner. Miller challenged Hoyt's authority for signing binding consents as the TMP because Hoyt was allegedly under a criminal tax investigation at the time he signed the extensions.

A hearing was held on Miller's objection to the IRS claim. On November 18, 1993, the bankruptcy court overruled Miller's objection to the IRS claim.[2]

Miller timely filed his notice of appeal.

## II. ISSUES

A. Whether the TMP had the authority to sign the consent to extend the assessment period on behalf of Miller.

B. Whether the closing agreement entered into by Miller pursuant to 26 U.S.C. § 7121(a) must be set aside based on an alleged misrepresentation by the IRS.

## III. STANDARD OF REVIEW

■ The bankruptcy court's interpretation of the Internal Revenue Code (26 U.S.C. §§ 1–9722) and its regulations are conclusions of law reviewed *de novo*. *United States v. Ramos*, 28 F.3d 978, 979 (9th Cir. 1994); *United States v. Hans*, 921 F.2d 81, 82 (6th Cir.1990) (Internal Revenue Code presents a question of statutory interpreta-

---

1. Honorable Herbert A. Ross, Bankruptcy Judge for the District of Alaska, sitting by designation.

2. The bankruptcy court decision was reported at 73 A.F.T.R.2d 94–376, 1993 WL 632255 (1993).

tion, a matter of law); *In re Reeves,* 164 B.R. 766, 767 (9th Cir. BAP 1994).

■ We review the bankruptcy court's determination of fact for clear error. *In re Heritage Hotel Partnership I,* 160 B.R. 374, 376 (9th Cir. BAP 1993). "Whether the misrepresentations were material under the circumstances, whether there was reasonable reliance, and whether there was intent to deceive are issues of fact." *In re Lansford,* 822 F.2d 902, 904 (9th Cir.1987).

## IV. DISCUSSION

### A. *Tax Matter Partner Authority to Extend Statute of Limitations*

■ In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). Pub.L. No. 97–248, §§ 401–06, 96 Stat. 324, 648–670 (1982). TEFRA is codified at 26 U.S.C. §§ 6221–6233. The purpose of TEFRA was to provide for the tax treatment of any partnership item at the partnership level. Prior to TEFRA becoming law, the IRS was required to provide for tax treatment of partnership items at the individual level. *See Transpac Drilling Venture, 1983–63 by Crestwood Hosp., Inc. v. U.S.,* 16 F.3d 383, 386–89 (Fed.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 79, 130 L.Ed.2d 33 (1994) (general discussion of TMP).

■ The TMP is the central figure of the partnership during an administrative proceeding with the IRS. The purpose of a TMP is to provide a liaison between the partnership and the IRS, and to provide a representative for the partnership to handle judicial proceedings in connection with the partnership. *See Computer Programs Lambda, Ltd. v. Commissioner,* 89 T.C. 198, 205, 1987 WL 42563 (1987).

Each partnership must designate a general partner as the TMP. 26 U.S.C. § 6231(a)(7)(A). If there is no general partner who has been designated as the TMP, then the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than one general partner having the same profits interest or no general

partner with a greater profits interest, the one partner whose name would appear first in an alphabetical listing) is designated as the TMP. 26 U.S.C. § 6231(a)(7)(B).

■ The TMP is the partnership's primary representative and has the power to bind the partnership. One of the powers of the TMP is to execute extensions of time to assess income taxes attributable to any partnership items on behalf of all the partners. 26 U.S.C. § 6229(b)(1)(B). *See generally* Arthur B. Willis, *Partnership Taxation* §§ 204.01–205.07 (4th ed. 1994).

Without extensions of time, the ordinary statute of limitations for assessments is three years from the date of the filing of the partnership return or the last day for filing a partnership return in any given taxable year. 26 U.S.C. § 6229(a)(1), (2).

The TMP designation must conform to the strictures of 26 U.S.C. § 6231(a)(7) and its regulations. *Monetary II Ltd. Partnership v. Commissioner,* 64 T.C.M. (CCH) 869, 1992 WL 233007 (1992). Temporary Treasury Regulation § 301.6231(a)(7)–1T(*l*) provides certain rules as to when and how the TMP designation may be terminated. More specifically, a TMP designation will be terminated if the partnership items of the TMP become nonpartnership items under section 6231(c) (relating to special enforcement areas). *See* 26 U.S.C. § 6231(b)(1)(D); Temp. Treas.Reg. § 301.6231(a)(7)–1T(*l*)(4) (1987); *Computer Programs Lambda,* 89 T.C. at 205.

26 U.S.C. § 6231(c) provides:

(c) **Regulations With Respect to Certain Special Enforcement Areas—**

(1) **Applicability of Subsection—**This subsection applies in the case of—

(A) assessments under section 6851 (relating to termination assessments of income tax) or section 6861 (relating to jeopardy assessments of income, estate, gift, and certain excise taxes),

(B) *criminal investigations,*

(C) indirect methods of proof of income,

(D) foreign partnerships, and

(E) other areas that the Secretary determines by regulation to present special enforcement considerations.

(2) **Items May Be Treated As Nonpartnership Items**—*To the extent that the Secretary determines and provides by regulations* that to treat items as partnership items will interfere with the effective and efficient enforcement of this title in any case described in paragraph (1), such items shall be treated as nonpartnership items for purposes of this subchapter.

(3) **Special Rules**—The Secretary may prescribe by regulation such special rules as the Secretary determines to be necessary to achieve the purposes of this subchapter in any case described in paragraph (1).

26 U.S.C. § 6231(c) (emphasis added).

Temporary Treasury Regulation § 301.6231(c)–5T provides in pertinent part:

The treatment of items as partnership items with respect to a partner under criminal investigation for violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising ... *shall be treated as nonpartnership items as of the date on which the partner is notified that he or she is the subject of a criminal investigation and receives written notification from the Service that his or her partnership items shall be treated as nonpartnership items.* The partnership items of a partner who is notified that he or she is the subject of a criminal investigation shall not be treated as nonpartnership items under this section unless and until such partner receives written notification from the Service of such treatment.

Treas.Temp.Reg. § 301.6231(c)–5T (1987) (emphasis added).

In this case, Miller asserts that Hoyt, the designated TMP, was without authority to enter into consents to extend the time period for assessment since he was under a criminal

tax investigation. The IRS contends that Hoyt would lose his designation only upon the occurrence of two events: (1) the partner is notified that he is the subject of a criminal investigation; and (2) the partner receives written notification from the IRS of conversion of items to nonpartnership.

■ A statute's plain meaning should be conclusive unless it creates an inconsistent or incoherent statutory scheme "at odds with the intentions of its drafters." *U.S. v. Ron Pair Enterprises., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *In re Palau Corp.,* 18 F.3d 746, 750 (9th Cir.1994). Based on our plain reading of the above stated regulation, we agree with the IRS that a TMP may have his designation terminated only by the occurrence of the two events, when the TMP is subject to a criminal investigation and receives written notification.[3]

■ The record indicates that the IRS had begun a criminal investigation of Hoyt in early 1985. However, Miller has failed to prove the two requirements; notification to Hoyt that he was under criminal investigation and notification from the IRS of the conversion of items to nonpartnership.

Miller claims that the bankruptcy court's reliance on *In re Leland,* 160 B.R. 834 (Bankr.E.D.Cal.1993), was misplaced and does not support the bankruptcy court's decision in this case. We disagree. *Leland* involved the same issues as this appeal. As the bankruptcy court noted, the facts in *Leland* are virtually indistinguishable from this appeal. In fact, Miller's counsel was also counsel in the *Leland* case.

In *Leland,* the debtors objected to a claim filed by the IRS arising from taxes attributable to Hoyt's limited partnerships. The bankruptcy court overruled the objection and held that consents to extend the time for assessing taxes were valid even though the tax matter partner was under criminal inves-

---

**3.** A TMP may have his designation automatically terminated in other circumstances, such as when the TMP either files a bankruptcy petition or is subject to receivership. Temp.Treas.Reg. § 301.6231(c)–7T (1987).

tigation at the time he executed consents. *Id.* at 835.

Miller also argues that the regulations are in conflict with the Internal Revenue Code and by merely showing that Hoyt was under criminal investigation, Hoyt's status as a TMP was terminated. We disagree. If this were true, no party with any certainty would know when a criminal investigation began in order to terminate a TMP's status. This uncertainty would undermine one of the main goals in enacting TEFRA.

■ The Secretary of the Treasury ("Secretary") has the authority to prescribe by regulation any rules needed to carry out the provisions and achieve the purposes of the Internal Revenue Code. 26 U.S.C. §§ 6231(b)(1)(D), 6231(c)(1)–(3). *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("If Congress has explicitly left a gap for the agency to fill.... [s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, of manifestly contrary to the statute" (footnote omitted).

■ Under the Internal Revenue Code, the TMP's designation may be terminated when the partnership items of the TMP become nonpartnership items under Section 6231(c) (relating to special enforcement areas). 26 U.S.C. § 6231(b)(1)(D). The regulations promulgated by the Secretary are not manifestly contrary to the statute as Miller suggests. Rather, the Secretary enacted Temporary Treasury Regulation § 301.6231(c)–5T to carry out the provisions of 26 U.S.C. § 6231(c)(2) and its purpose.

Hoyt's authority as the designated TMP could not be terminated based on the criminal investigation until he received written notification from the IRS of the conversion of

items to nonpartnership. In summary, it is both the regulations and the Internal Revenue Code which provides that the TMP designation shall be terminated upon the criminal investigation and the written notification that partnership items shall be treated as nonpartnership items. Therefore, we hold that the TMP had authority to enter into consents with the IRS to extend the time for assessments and bind Miller to the extensions.[4]

### B. *Setting Aside the Closing Agreement*

■ A closing agreement is a written agreement between an individual and the Commissioner which settles or "closes" the liability of that individual with respect to any internal revenue tax for a taxable period. If the agreement is signed and accepted by the Commissioner or his delegate, the agreement is final and conclusive as to both the taxpayer and the IRS. 26 U.S.C. § 7121; *see generally* 14 Mertens, *Law of Federal Income Tax,* §§ 52.01–62 (1994).

A closing agreement will not be final and conclusive if there is a showing of "fraud or malfeasance, or misrepresentation of a material fact." 26 U.S.C. 7121(b); Reg. §§ 601.202(a)(1), 301.7121–1(c), *see Pack v. U.S.,* 992 F.2d 955, 959–60 (9th Cir.1993); *Zaentz v. Commissioner,* 90 T.C. 753, 761, 1988 WL 34876 (1988).

■ In order for a closing agreement to be set aside by reason of misrepresentation, there must be misrepresentation of a material fact that goes to the essence of the agreement. *Ingram v. Commissioner,* 32 B.T.A. 1063, 1064, 1935 WL 287 (1935), *aff'd,* 87 F.2d 915, 916 (3d Cir.1937) (interpreting § 606).[5] The party attacking the agreement must prove that he signed the closing agreement in reliance on the misrepresentation. Rev.Rul. 73–459, 1973–2 C.B. 415.

---

4. Miller also suggests that Hoyt did not possess alternate authority under state law to bind Miller to the extensions. The bankruptcy court stated in its memorandum decision that it would not decide this issue since "Hoyt was the tax matter partner and that he could extend the statute of limitations on behalf of all of the partners." We agree with the bankruptcy court, that in this case, resorting to state agency law is not necessary.

5. Section 1106(a) of the Revenue Act of 1926 was amended by § 606 of the Revenue Act of 1928, 7 Pub.L. No. 562, 45 Stat. 791, 874, which in turn was amended by § 801 of the Revenue Act of 1938, Pub.L. No. 554, 52 Stat. 447, 573. In 1954, Congress enacted § 7121 to amend § 801 of the Revenue Act of 1938. 1954 I.R.C., Pub.L. No. 591, 68A Stat. 849. Section 7121 was amended by § 1906(b)(13)(A) of the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, 1825. Section 7121 as amended by the Tax

When a taxpayer makes no showing that the Commissioner misrepresented material facts, the agreement must be upheld. *Dubinsky v. Becker*, 64 F.2d 601, 602 (8th Cir.1933). "A mere mistake of fact or law, whether unilateral or mutual, no matter how material, is not a misrepresentation." *Andrews v. U.S.*, 805 F.Supp. 126, 130 (W.D.N.Y.1992) (citing *Ingram*, 87 F.2d at 916); *Wolverine Petroleum Corp. v. Commissioner*, 75 F.2d 593, 596 (8th Cir.), *cert. denied*, 295 U.S. 743, 55 S.Ct. 656, 79 L.Ed. 1689 (1935) ("Full consideration dictates that matters affecting the taxpayer's liability once concluded by a closing agreement should be respected in every particular, and subject to attack only upon the grounds enumerated in the statute"); *Sarti v. U.S.*, 92–2 U.S.T.C. ¶ 50,541, 70 A.F.T.R.2d 92–6160, 6162, 1992 WL 360306 (1992) ("mistake of fact is not grounds for rescinding the closing agreement").

Miller argues that the IRS misrepresented several material facts which would have prevented him from signing the agreement. More specifically, Miller claims that at the time he signed the agreement he was not represented by legal counsel, he did not know the legal consequences of the criminal tax investigation of Hoyt, he did not know that the statute of limitations had already expired on the partnership items, and that the IRS silence of those facts was intended to deceive Miller. Based on those facts, Miller seeks to set aside the closing agreement.

Previously courts have held that the closing agreement is binding and conclusive upon the parties even if the tax is later declared to be unconstitutional or in conflict with other internal revenue sections. *Aetna Life Ins. Co. v. Eaton*, 43 F.2d 711, 714 (2d Cir.), *cert. denied*, 282 U.S. 887, 51 S.Ct. 90, 75 L.Ed. 782 (1930) (holding tax levied and collected illegally under a statute declared unconstitutional cannot be avoided when included in closing agreement); *Wolverine Petroleum*, 75 F.2d at 596 (holding closing agreement takes priority over conflicting statute).

The IRS is not under any sort of duty to provide Miller with legal advice. If Miller had any doubts as to the statute of limitations on the collection of the taxes or

Reform Act of 1976, is the statute that applies in

any other provision of the closing agreement he should not have executed the closing agreement. In any case, the IRS believed and we agree that the statute of limitations had not run.

We hold that Miller has failed to prove any of the enumerated grounds under § 7121(b) for setting aside the closing agreement.

## V. CONCLUSION

The TMP had the authority to sign the consents to extend the assessment period on behalf of Miller. In addition, Miller has failed to prove any of the enumerated defenses to setting aside a closing agreement executed between himself and the IRS. Accordingly, we AFFIRM.

VOLINN, Bankruptcy Judge, Concurring:

I agree with the ruling affirming the court below on the basis of the reasoning set forth in Part B of this Opinion. The closing agreement entered by Miller was not attended by circumstances which would warrant that it be set aside.